IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUR WORLD, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-3265 |
| | : | |
| BENCO DENTAL SUPPLY COMPANY | : | |

**ORDER**

AND NOW, this 29th day of March, 2019, upon consideration of Benco Dental Supply Company's motion to dismiss the Amended Complaint, Colur World, LLC's opposition thereto, Benco Dental Supply Company's reply, Colur World, LLC's sur-reply, and the parties' presentation during the November 27, 2018, oral argument on the motion, it is ORDERED the motion (Document 9) is GRANTED.[1] Colur World, LLC's Amended Complaint is DISMISSED for lack of subject matter jurisdiction.

---

[1] Plaintiff Colur World, LLC (Colur World) brings this declaratory judgment action against Defendant Benco Dental Supply Company (Benco) seeking a declaration that Benco is prohibited from challenging Colur World's pink nitrile glove trademark registration with the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office. Benco has filed a motion to dismiss.

Colur World is the exclusive owner of all right, title, and interest in a trademark consisting of the color pink as well as the word mark PINK NITRILE for use with medical and dental nitrile gloves. Over the past thirteen years, Benco has purchased over 12,990,000 PINK NITRILE gloves from Colur World's authorized licensees without any dispute or challenge. In 2011, Colur World agreed to consent to Benco's use of the color fuchsia in connection with nitrile gloves in exchange for Benco's promise to refrain from using any color or shade that could be confused with Colur World's color pink mark.

In March 2017, Benco filed a petition with the TTAB to cancel Colur World's United States trademark for the pink glove mark. In this proceeding, Benco challenged Colur World's right to the color pink mark, alleging that the color pink in connection with nitrile gloves is incapable of serving as a trademark. Following this filing, Benco "threatened to collude with other distributors to take legal action" against Colur World if it did not allow Benco to manufacture and sell the pink nitrile gloves without payment of royalty fees and attempted to obtain a royalty-free license from Colur World. Am. Compl. ¶ 28. It also sent Colur World a "menacing letter" advising Colur World that it may partner with other distributors "on the project" if Colur World refused to agree to a royalty-free license. *Id.* ¶ 29, Ex. E. In July 2018, Benco contacted Colur World again to demand a royalty-free license to manufacture, distribute,

and sell the pink nitrile gloves. Based on these allegations, Colur World seeks a declaratory judgment that Benco is precluded from pursuing the cancellation action before the TTAB and precluded from otherwise challenging the validity of Colur World's marks. In response, Benco moves to dismiss Colur World's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that there is no justiciable case or controversy before the Court.

"Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). Here, Benco brings a "facial attack" because it argues Colur World's Amended Complaint fails to invoke the Court's subject matter jurisdiction pursuant to the Declaratory Judgment Act. *See id.* (internal quotation marks and citation omitted) (a "facial attack concerns an alleged pleading deficiency."). The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of Cases and Controversies that are justiciable under Article III [of the Constitution]." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted).

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court explained how courts are to determine whether a declaratory judgment action satisfies the case-or-controversy requirement of Article III. *Id.* In that case, a patent licensee brought an action pursuant to the Declaratory Judgment Act against a licensor seeking a declaratory judgment of invalidity, unenforceability, non-infringement in addition to a declaration of contractual rights. *Id.* The Court explained that to determine what constitutes a justiciable controversy under the Declaratory Judgment Act, courts should consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Although *MedImmune* was a patent case, its justiciable controversy test has been applied to other intellectual property right actions seeking a declaratory judgment. *See, e.g., Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1247 (10th Cir. 2008) (applying *MedImmune* to a trademark case).

*MedImmune* directs courts to consider "all the circumstances" to determine whether there is a substantial controversy. 549 U.S. at 127. Although TTAB proceedings are a factor that should be considered in the Court's controversy analysis, the weight they are to be given varies. *See Surefoot*, 531 F.3d at 1247 ("[T]o say TTAB proceedings are not categorically irrelevant does not answer the question what weight they deserve. One might worry, for example, whether the filing of a single TTAB opposition without a hint of an infringement claim should hold much sway in a jurisdictional analysis."). For example, in *SnoWizard, Inc. v. Snow Ball's Chance, Ltd.*, the court dismissed an action for declaratory judgment concerning the validity of a former judgment and noted that "the filing of a petition for cancellation before the TTAB alone" does not create a case or controversy. No. 15-1002, 2015 WL 5682640, at *6 (E.D. La. Sept. 25, 2015); *see also Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 396-97 (S.D.N.Y. 2011) ("defendant's opposition to plaintiff's trademark registration through a cease-and-desist letter and Notice of Opposition before the TTAB—accompanied by settlement negotiations touching on use of the disputed mark—is insufficient to create an actual controversy based on infringement"). Similarly, in *Wham-O, Inc. v. Manley Toys, Ltd.*, another court found

2

that a plaintiff—the owner of several marks—seeking a declaration that its marks were valid while the defendants' cancellation proceedings against the marks were underway before the TTAB failed to establish a judiciable controversy. No. 08-7830, 2009 WL 6361387, at *4-5 (C.D. Cal. Aug. 13, 2009). The court found that the initiation of a TTAB proceeding was insufficient to create a substantial controversy because the plaintiff had not alleged that defendants had threatened to sue the plaintiff regarding its use of the marks. *Id*. at *4. Other courts have also noted that "potentially infringing activity or meaningful preparation to conduct potentially infringing activity [is] an important element in the totality of circumstances [that] must be considered in determining whether a declaratory judgment is appropriate." *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 445-46 (W.D. Pa. 2016) (alteration in original) (internal quotation marks and citation omitted).

Here, the Court agrees with Benco that there is no justiciable controversy for purposes of the Act. The parties are currently involved in a cancellation proceeding before the TTAB in which Benco challenges whether Colur World's trademark can function as a trademark, and it is undisputed that there have been no claims of infringement made by either party. As previously explained, a single dispute before the TTAB is generally insufficient to establish a controversy for the purposes of a declaratory judgment action.

The TTAB proceeding coupled with Colur World's assertions that Benco "threatened collusion and legal action" Opp'n 4-6, do not rise to the level of a substantial controversy either. These assertions include a Benco representative approaching Colur World representatives at a New York Dental meeting and "threaten[ing] to collude with other distributors to take legal action against Colur World," Am. Comp. ¶ 28, and a "menacing letter," *id*. ¶ 29, from Benco. The letter, which has portions related to settlement negotiations redacted, states in its entirety:

> It was good to see you at the New York Dental meeting, and while our conversation did get tense at times, I believe it's possible that we made some good progress.
>
> ***
>
> After our discussion, I went to look up our legal bills related to this matter. You are right – lawyers are expensive! Our fees over the past year, however, have bought us quite a dossier of work product in the study of your trademark, and it is our strong opinion that the facts prove that your mark is invalid.
>
> If this matter goes on much longer, we'll likely reach out to another vendor partner of ours (or two) who currently sell pink nitrile, share the facts related to the matter, and partner with them on the project, in order to share our legal expenses.
>
> ***
>
> Looking forward to continued progress[.]

Am. Compl. Ex. E.

The alleged threats and letter contain no suggestion that Colur World is potentially engaging in infringing activity. While cease and desist letters coupled with other indications of a substantial controversy may suffice to confer a court with Article III subject matter jurisdiction, the letter at-issue contains no language indicating that Benco will take any immediate legal action—let alone some sort of specifically identifiable legal action. Neither does it reference an immediate or real threat to file a trademark infringement action. And indeed, as Colur World

conceded during oral argument, all of the cases it cites to support its position that a substantial controversy exists had assertions of infringement or threats of infringement litigation. *See, e.g.*, *Compass Minerals Am., Inc. v. Gaia Enters. Inc.*, No. 16-2175-JAR-GLR, 2016 WL 6905883, at *3 (D. Kan. Nov. 21, 2016) (finding a substantial controversy where defendant filed a cancellation petition and petition clearly asserted trademark infringement); *Icon Health & Fitness, Inc. v. Relax-a-cizor Prods., Inc.*, No. 12-CV-00017-SA, 2012 WL 1604376, at *2 (D. Utah May 7, 2012) (finding that a cease and desist letter combined with allegations contemplating legal action based on of use and infringement sufficient to establish a substantial controversy). While threats of other types of legal action may support the controversy requirement in some instance, vague threats of legal action like those present here coupled with the TTAB proceeding do not rise to the level "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127.

The Court additionally fails to discern how allegations of collusion and attempts to seek a royalty-free license create a controversy or make the possibility of legal action more likely and concrete. To the extent that Colur World asserts that "whether Defendant is precluded from pursuing the Cancellation Action" is within the confines of a declaratory judgment action, Opp'n at 5, Colur World has failed to cite any cases in the patent or trademark context that support this proposition. Although "Article III jurisdiction may be met where the patentee[, i.e., the holder of an intellectual property right] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do," *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1381 (Fed. Cir. 2007), Colur World does not allege that it is being forced to pursue illegal behavior, i.e., infringe, or stop using its mark. The Court therefore finds that there is no justiciable controversy before the Court.

Even if there was a justiciable controversy, the Court would decline exercising its jurisdiction under the Act. *See United Fin. Cas. Co. v. Fornataro*, No. 08–1301, 2008 WL 4283347, *1 (W.D. Pa. Sept.18, 2008) (noting that the Declaratory Judgment Act "affords [courts] discretion in deciding whether to declare the rights of litigants" (quoting *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995))). The Third Circuit requires district courts to weigh several factors in deciding whether to entertain a declaratory judgment action. The presence of a parallel state court proceeding is a significant factor that weighs heavily against the exercise jurisdiction under the Act. *Kelly v. Maxum Specialty Insurance Group*, 868 F.3d 274, 282 (3d Cir. 2017). In the absence of such a proceeding, courts should consider (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; and (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata. *Id*. at 283. Courts may also "weigh other factors bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution." *Id*. (alteration in original) (internal quotation marks and citation omitted).

Here, while there are no parallel state court proceedings, the court finds that the TTAB proceedings are similar to a parallel state court proceeding, the presence of which weighs heavily toward declining jurisdiction. As to the other relevant factors, although the federal court declaration would resolve whether the Benco could pursue the cancellation proceeding, the underlying issue—whether the color pink mark is capable of serving as a trademark—would

BY THE COURT:


<u>/s/    Juan R. Sánchez</u>
Juan R. Sánchez, C.J.

---

remain unresolved. Colur World asks the Court to explicitly resolve whether Benco is precluded from challenging Colur World's rights in the color pink mark. This is an issue that can be properly resolved in the TTAB proceeding already underway. Thus, the Court declining jurisdiction here would also promote judicial economy by avoiding duplicative litigation. *See State Auto Ins. Co. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2001) (court should "decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation"). Accordingly, even if a justiciable controversy existed, the Court would decline to exercise jurisdiction pursuant to the Declaratory Judgment Act. Because there is no actual controversy to establish this Court's jurisdiction, however, Benco's motion to dismiss is granted.